UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of R.J. SANDERS, INC., Plaintiff, | |
| v. | C.A. 06-454S |
| O. AHLBORG & SONS, INC., CASUALTY INSURANCE COMPANY, CENTRAL MAINE POWER PLANT, COMBINED ENERGIES, a Division of the UNION WATER COMPANY, and WESTCHESTER FIRE INSURANCE COMPANY, Defendants. | |

**DEFENDANT O. AHLBORG & SONS, INC.'s MEMORANDUM IN SUPPORT OF MOTION TO STAY PENDING ARBITRATION**

Defendant O. Ahlborg & Sons, Inc. ("Ahlborg") moves to stay Counts I, II, III, and IV of the Complaint in favor of arbitration.[1] Plaintiff R. J. Sanders, Inc. ("Sanders") and Ahlborg expressly agreed, in clear and unambiguous language, to arbitrate "any dispute, controversy, or claim" concerning Sanders' work at the Newport Naval Station Newport Heating Decentralization System Project ("Project"). Sanders' claims against Ahlborg each directly concern its work at the Project and the obligations of Sanders and Ahlborg under their Subcontract. The Federal Arbitration Act and the Rhode Island Arbitration Act require that the Court stay in favor of arbitration where the parties have expressly agreed to arbitrate their disputes. Thus the Court should stay Counts I through IV in favor of arbitration.

[1] Plaintiff Sanders alleged six Counts in its Complaint, of which only Counts I through IV are alleged against Ahlborg. Counts II and III are also brought against Ahlborg's surety, Casualty Insurance Co., which is filing an Answer as to these Counts. This motion to stay does not address Sanders' claims against the surety.

## I. <u>The Subcontract Between Sanders and Ahlborg Unequivocally Requires That Sanders Arbitrate Counts I Through IV Against Sanders.</u>

On April 13, 2004, Sanders and Ahlborg signed a Subcontract Agreement with addenda by which Sanders agreed to provide HVAC services at the Project ("the Subcontract"). Copies of the Subcontract and addenda are attached as Exhibit A to the Affidavit of Eric Ahlborg, <u>Attachment 1</u>. *Id.* at ¶ 2. Sanders worked at the Project from 2004 through mid-2005, until Ahlborg declared Sanders in default of the Subcontract. *Id.* at ¶ 3.

The Subcontract contains clear and unambiguous language governing dispute resolution. Article 12.3 of the Claims and Dispute Resolution section of the Subcontract states:

> Any dispute, controversy, or claim concerning the construction or application of this Agreement, other than those claims arising under paragraph 8.7 of this Agreement,[2] that is not settled by the parties shall be decided in accordance with the dispute resolution procedures contained in the Owner-General Contractor Agreement. If the Owner-General Contractor Agreement does not provide a dispute resolution procedure, the dispute shall be arbitrated in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The decision of the arbitrator shall be binding and judgment upon the award rendered by the Arbitrator may be entered into any court having jurisdiction thereof.

Thus, the Subcontract unambiguously requires that the parties submit all claims concerning the Subcontract to binding arbitration unless the Owner-General Contractor Agreement provides a dispute resolution procedure.

In fact, the Owner-General Contractor Agreement between the U.S. Navy (Owner) and Central Maine Power Company (General Contractor) does not provide a dispute resolution procedure for Sanders' claims, as a sub-subcontractor, against Ahlborg, the subcontractor. The Owner-General Contractor Agreement incorporates by reference a Disputes procedure at 48 C.F.R. Subpart 33.2 (Oct. 95). *See* Owner-General Contractor Agreement at pp. I-5, I-7, J-C1-10, J-C1-11, excerpts attached as <u>Attachment 2</u>. This regulation only provides for resolution of

[2] Paragraph 8.7 addresses Sanders' disputes with the Owner (U.S. Navy), and is not applicable here.

disputes between the Owner and General Contractor. 48 C.F.R. § 33.203 (citing to 48 C.F.R. 52.233-1), Attachment 2. Without a governing disputes resolution procedure in the Owner-General Contractor Agreement, the parties' agreement to arbitrate governs resolution of claims concerning the Subcontract.

## II. **Because Sanders and Ahlborg Agreed to Arbitrate Their Subcontract Disputes, the Federal Arbitration Act and Rhode Island Arbitration Act Require That The Court Stay Counts I Through IV Against Ahlborg.**

The Subcontract's unambiguous agreement to arbitrate requires that this Court stay Sanders' claims under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and Rhode Island's Arbitration Act ("RIAA"), R.I. Gen. Laws § 10-3-1 *et seq. Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983); *Bjartmarz v. Pinnacle Real Estate Tax Serv.*, 771 A.2d 124, 127 (R.I. 2001). Section 3 of the FAA provides that where the subject matter of a dispute is subject to an agreement to arbitrate, the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

The federal policy favoring arbitration and the FAA require that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," including "the construction of the contract language itself." *Id.* at 24-25; *Municipality of San Juan v. Corporacion Para El Fomento*, 415 F.3d 145, 149 (1st Cir. 2005). If the "underlying dispute is within the ambit of the arbitration agreement, resolution of that dispute is for the arbitrator." *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 277 (7th Cir. 1992).

The RIAA parallels the FAA and likewise provides that "the court . . . shall, on application of one of the parties, stay the trial of the action until the arbitration has been had in accordance with the terms of the agreement." R.I. Gen. Laws § 10-3-3. When the parties to a contract have a clearly written agreement to arbitrate, the Rhode Island Arbitration Act provides

a statutory right to binding arbitration. *See Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co.*, 687 A.2d 323, 326 (R.I. 1997) (citing R.I.G.L. § 10-3-1 *et seq.*) So long as the arbitration clause is enforceable, the court proceedings must be stayed. *Bjartmarz v. Pinnacle Real Estate Tax Serv.*, 771 A.2d 124, 127 (R.I. 2001) (emphasis added). To the extent any uncertainty exists about the arbitrability of a dispute, the Rhode Island Supreme Court follows the U.S. Supreme Court's '"policy in favor of resolving any doubt in favor of arbitration."' *School Comm. v. Crouch*, 808 A.2d 1074, 1078 (R.I. 2002), *quoting Brown v. Amaral*, 460 A.2d 7, 10 (R.I. 1983); *see also Municipality of San Juan*, 415 F.3d at 149.

Sanders' claims against Ahlborg and its surety clearly arise out of Project disputes and Ahlborg's alleged breach of the Subcontract. Sanders seeks compensation for services which it alleges were performed at the Project pursuant to the Subcontract. As against Ahlborg, Sanders alleges breach of the Subcontract (Count I), payment on Ahlborg's bond issued under the Subcontract (Count II), Ahlborg's failure to perform at the Project (Count III), and breach of the covenant of good faith and fair dealing under the Subcontract (Count IV). *See Complaint* at ¶¶ 7-27. Each of these Counts directly concerns the Subcontract. Moreover, where the parties have a broad arbitration clause, and in the absence of an express provision excluding a particular grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Municipality of San Juan*, 415 F.3d at 149 (quoting *Mobil Oil Corp. v. Local 8-766, Oil, Chemical & Atomic Workers Int'l Union*, 600 F.2d 322, 328 (1st Cir. 1979)). The Court should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Municipality of San Juan*, 415 F.3d at 149 (quoting *AT&T Techs., Inc. v. Communication Workers*, 475 U.S. 643, 650 (1986)).

These "basic arbitration principles", *Municipality of San Jose*, 415 F.3d at 149, require that the Court find that Counts I through IV against Ahlborg are subject to the Subcontract's requirement to arbitrate. And because these claims must be arbitrated, the FAA and RIAA require that this Court stay the claims until an arbitrator renders a binding decision. Upon a decision, the parties may return to this Court to have judgment entered.

For these reasons, Ahlborg respectfully requests that the Court stay Counts I through IV against Ahlborg in favor of arbitration.

O. AHLBORG & SONS, INC.
By its attorneys,

/s/ John E. Bulman

John E. Bulman, Esquire
Laura J. Bottaro, Esquire
Little Medeiros Kinder Bulman & Whitney, P.C.
72 Pine Street
Providence, RI 02903
(401) 272-8080
Fax: (401) 521-3555
jbulman@lmkbw.com
lbottaro@lmkbw.com

Dated: December 8, 2006

CERTIFICATE OF SERVICE

I hereby certify that I caused to be served by electronic means (ECF) a copy of the within Motion on the 8th day of December, 2006, to the following:

Joseph J. Reale, Jr., Esquire
reale@conversent.net

Brent R. Canning, Esquire
bcanning@haslaw.com

/s/ John E. Bulman

*F:\Laura\Ahlborg\RJ Sanders\RJS v. Ahlborg & Combined Energies & Sureties\memo-support motion to stay.doc*