# EXHIBIT A
# TO ATTACHMENT 1

UA

# SUBCONTRACT AGREEMENT

U/H

**O. AHLBORG & SONS, INC.**
48 Molter Street
Cranston, Rhode Island 02910
Telephone: (401) 467-6300
Facsimile: (401) 467-6457

**JOB NO.: 03-007-0**

**ORDER NO.: 30070-15-01**

**DATE: April 13, 2004**

Agreement made this **13th** day of **April, 2004**, by and between O. Ahlborg & Sons, Inc., and the Subcontractor, **R. J. Sanders, Inc.**, the project listed below.

---

| | |
|---|---|
| **PROJECT:** | **Naval Station Newport Heating System Decentralization** |
| **SUBCONTRACTOR** | **R. J. Sanders, Inc.**<br>**137 Child Street**<br>**P.O. Box 366**<br>**Warren, RI 02885** |
| **CONTRACTOR:** | **O. Ahlborg & Sons, Inc.** |
| **GENERAL CONTRACTOR:** | **Combined Energies, a Division of the Union Water Power Company** |
| **OWNER:** | **Naval Station Newport, RI** |

---

Provide all labor, materials, equipment, tools and services necessary at the above noted project for the complete performance of the scope of work listed below in strict accordance with the attached exhibits listed below, including this eighteen (18) page Subcontract Agreement

1. Exhibit 1 - A Scope of Work - Detail Sheet
2. Exhibit 2 - A List of Project Documents, Drawings and Specifications

**For the** Lump Sum **AMOUNT OF:** $ 6,450,000.00
**Amount Written:** Six Million Four Hundred Fifty Thousand Dollars & no/100, including all applicable Taxes

| **Task Cost Code** | **Item** | **Cost** |
|---|---|---|
| 15-100 | Mechanical Subcontract | $ 6,450,000.00 |

---

**Terms:** As provided and paid by GC – 10% Retainage

---

**THIS COVER PAGE IS PAGE ONE OF THE SUBCONTRACT AGREEMENT To the extent that the terms and conditions of this Cover Page are in conflict with any other provisions of this Subcontract Agreement, the terms of this Cover Page shall govern.**

O. AHLBORG & SONS, INC. IS AN EQUAL OPPORTUNITY EMPLOYER

Subcontractor Initials OJA

***ARTICLE I***

***GENERAL***

1.1 The Contract Documents consist of: (1) this Agreement, as modified pursuant to the terms hereof; (2) O.Ahlborg & Sons, Inc. Standard Conditions, if any; (3) the Design-Build Subcontract, consisting of the Agreement between the Contractor and General Contractor (referred to hereafter as the General Contractor-Contractor Agreement); and (4) the Prime Contract, consisting of the Agreement between the Owner and General Contractor and the other contract documents enumerated therein, including Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Agreement between the Owner and General Contractor, whether before or after the execution of this Agreement, and other contract documents, if any, listed in the Owner-General Contractor Agreement. In the event of conflicts or discrepancies among the Contract Documents, the documents shall be construed based upon the following priorities: (1) this Agreement; (2) O.Ahlborg & Sons, Inc. Standard Conditions, if any; (3) the General Contractor-Contractor Agreement; (4) the Owner-General Contractor Agreement; (5) the Drawings; (6) the Specifications; (7) the Supplementary General Conditions; and (8) the General Conditions. If this order of priority is different under the Owner-General Contractor Agreement, the order of priority in that Agreement shall be applied.

1.2 The Contract Documents are complementary and what is required by one shall be binding as if required by all. Items omitted from the Contract Documents shall be included within the scope of the Work if they are required by applicable law, regulation, or code, or if they are inferable from the intent of the Contract Documents, or if they are necessary to produce the intended results as defined or construed by the Owner, General Contractor, Contractor, and/or Architect.

1.3 Subcontractor shall be bound unto Contractor with respect to each of the provisions of the foregoing paragraph which Contractor may be obligated by the terms of the General Contractor-Contractor Agreement to incorporate herein:

(a) The Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The contractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to the following: Employment, upgrading, demotion, or transfer, recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The Contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this non-discrimination clause. (b) The Contractor will, in all solicitations or advertisements for employees placed by or on behalf of the Contractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin. (c) The Contractor will send to each labor union or representative or workers with which it has a collective bargaining agreement or other contract or understanding a notice to be provided by the agency contracting officer, advising the labor union or workers' representative of the Contractor's commitments under Section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places available to employees and applicants for employment. (d) The Contractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and of the rules, regulations, and relevant orders of the Secretary of Labor. (e)

Subcontractor Initials ______

7.10 INSURANCE TO PROTECT PROJECT. (a) Upon written request of the Subcontractor, the Contractor shall provide the Subcontractor with a copy of the Builders Risk / Installation Floater policy of insurance or any other property or equipment insurance in force for the Project and procured by the Owner, General Contractor or Contractor. The Contractor will advise the Subcontractor if a Builder's Risk / Installation Floater policy of insurance is not in force.

(b) If the Owner, General Contractor or Contractor has not purchased Builder's Risk / Installation Floater insurance or other property and equipment insurance satisfactory to the Subcontractor, the Subcontractor may procure such insurance as will protect the interests of the Subcontractor, its subcontractors and their subcontractors in the Subcontract Work.

(c) If not covered under the Builder's Risk / Installation Floater policy of insurance or any other property or equipment insurance required by this Agreement, the Subcontractor shall procure and maintain at the Subcontractor's own expense property and equipment insurance for the Subcontract Work including portions of the Subcontract Work stored off the site or in transit, when such portions of the Subcontract Work are to be included in an application for payment under Article IV.

7.11 WAIVER OF SUBROGATION. The Contractor and Subcontractor waive all rights against each other, the Owner, the General Contractor,and the Architect/Engineer, and any of their respective consultants, subcontractors, and sub-subcontractors, agents and employees, for damages caused by perils to the extent covered by the proceeds of the Builders Risk / Installation Floater insurance policy or any other property or equipment insurance, except such rights as they may have to the proceeds of such insurance. The Subcontractor shall require similar waivers from its subcontractors.

7.12 ENDORSEMENT. If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

## *ARTICLE VIII*

## CHANGES IN THE WORK

8.1 The Subcontractor may be ordered in writing by the Contractor, without invalidating this Agreement, to make changes to the Work within the general scope of the Agreement. These changes may consist of additions, deletions, or other revisions, the Contract Sum and the Work Schedule being adjusted accordingly. Subcontractor, prior to the commencement of such changed or revised Work, shall submit promptly to the Contractor written copies of any claim for adjustment to the Contract Sum and Schedule for such revised work in a manner consistent with the Contract Documents.

8.2 Where changes in the Work involve both additions and deletions, percentages for overhead and profit shall be applied to the net increase of such values for labor and materials.

8.3 The amount to be paid by the Contractor for changes in the Work, as outlined in paragraph 8.1 above, shall be made on the basis of one of the following methods:

(a) by mutual acceptance of a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation and agreement between the Contractor and the Subcontractor; or

(b) by unit prices stated in the Contract Documents; or

(c) if no such unit prices are set forth and if the parties cannot agree upon a lump sum, then by actual net cost in money to the Subcontractor of materials and labor (including insurance and applicable taxes) required, plus rental of plant equipment (other than small tools and small equipment), plus compensation for overhead and for profit as set forth in paragraph 8.6. Field overhead will not be considered as part of actual net cost; or

(d) by the method provided in subparagraph 8.4.

8.4 If none of the above methods set forth in clauses 8.3(a) through 8.3(c) is agreed upon, the Subcontractor, provided it receives a written order signed by the Contractor, shall promptly proceed with the Work involved. The cost of such Work shall be determined by the Contractor on the basis of reasonable expenditures and savings of those performing the Work attributable to the change including, in the case of an increase in the contract sum, a reasonable allowance for overhead and profit. In such case, and also under clauses 8.3(c) and 8.3(d) above, the Subcontractor shall keep and present, in such form as the Contractor may prescribe, an itemized accounting together with appropriate supporting data for inclusion in a change order. Unless otherwise provided in the Contract Documents, cost shall be limited to the following: cost of materials including sales tax and cost of delivery; cost of labor including social security, old age and unemployment insurance and fringe benefits required by agreement or custom; workers or workmen's compensation insurance; bond premiums; rental value of equipment and machinery; and the additional costs of supervision and field office personnel directly attributable to the change. Pending final determination of cost, payments on account shall be made as determined by the Contractor. The amount of credit to be allowed by the Subcontractor for any deletion or change which results in a net decrease in the contract sum will be the amount of the actual net cost as confirmed by the Contractor. When both additions and credits covering related work or substitutions are involved in any one change, the allowance for overhead and profit shall be figured on the basis of the net increase, if any, with respect to that change.

8.5 Contractor's duly authorized representative shall have access, at all reasonable times, to Subcontractor's personnel books, records, correspondence, instructions, plans, drawings, receipts, vouchers and memoranda of every description pertaining to changes in the work for the purpose of auditing and verifying Subcontractor's net cost of change or for any other reasonable purpose Contractor's representative shall have the right to reproduce any of the aforesaid documents. Subcontractor shall preserve, and shall cause its subcontractors to preserve all the aforesaid documents for a period of three (3) years after the completion and acceptance or termination of work.

8.6 The allowable Subcontractor and lower-tier subcontractor markup percentages for overhead and profit on change order work allowable under Article 8.3 shall not exceed the following percentages:

| | |
|---|---|
| Subcontractor markup on self-performed work | 15% |
| Lower tier subcontractor markup on self-performed work | 10% |
| Subcontractor markup (of any tier) on work performed by lower tier subcontractor | 5% |

**8.7 CLAIMS RELATING TO OWNER.**

**8.7.1 SUBCONTRACTOR'S CLAIMS.** Any dispute arising under this Agreement relating in any way to any omission or any instruction or direction given by the Owner or its Architect may be pursued as follows:

(a) The Contractor may include the dispute in a claim against the General Contractor and may require the Subcontractor to participate in the prosecution and share in the expense of such claim; or

(b) The Subcontractor, subject to the Contractor's approval and in accordance with agreed-upon procedures and conditions, may at its own expense submit a claim against the General Contractor in the name of the Contractor.

(c) For any claim regardless of amount brought by Subcontractor through the procedures set forth in subparagraphs (a) or (b) of this Section 8.7.1, the Subcontractor shall provide to the Contractor a certification as required by the Contract Disputes Act (41 U.S.C. §605).

(d) For any claim brought against the Owner through the procedures set forth in this Section 8.7.1, the Owner's final decision or any final ruling in accordance with the Contract Disputes Act shall be final and binding upon the Subcontractor and the Subcontractor shall have no recourse against the Contractor.

**8.7.2 DUTY TO PROCEED.** The Subcontractor shall proceed diligently with performance of the Work pending final resolution of any request for relief, claim, appeal, or action arising under this Section, or any other provision of this Agreement.

**8.7.3 NOTICE REQUIREMENTS.** To the extent the Contract Documents or the Federal Acquisition Regulations require the Contractor to give the various specific notices to the General Contractor and/or Owner as the work progresses, the Subcontractor shall give timely written notice to the Contractor sufficiently in advance of the time limits to enable the Contractor to act in accordance with the General Contractor's and Owner's requirements. Otherwise, the Subcontractor will be deemed to have waived any claims based on such events.

## *ARTICLE IX*

## DEFAULT AND REMEDIES

9.1 (a) The Subcontractor shall be in default hereunder if:

(1) The Subcontractor is adjudged bankrupt, or if it makes a general assignment for the benefit of its creditors, or if a receiver is appointed on account of its insolvency, or if it fails to make prompt payment to its subcontractors, suppliers or employees for materials, equipment or labor, or

(2) The Subcontractor shall fail to perform any obligation under this Agreement or any other agreement between the Contractor and the Subcontractor, including but not limited to its failure to make prompt payment to its subcontractors, suppliers or employees for labor, material or equipment, or at any time shall fail or refuse to supply sufficient and proper quality workers, equipment and materials or to comply with the Work Schedule, to the satisfaction of the Contractor.

(b) In the event the Subcontractor shall be in default pursuant to subparagraph (a) hereof the Contractor shall give forty-eight (48) hours written notice to the Subcontractor, and on the expiration of such period and the failure of the Subcontractor to cure such default, the Contractor may elect either or both of the following remedies:

(1) Provide any labor, materials or equipment necessary to perform the Subcontractor Work and to deduct the cost thereof, including an amount equal to fifteen percent (l5%) thereof representing the Contractor's overhead, from any payments then or thereafter due to the Subcontractor. If the amount thereof is greater than any monies remaining under the Contract Sum, the Subcontractor shall pay the Contractor the difference on demand; and/or

(2) Terminate the employment of the Subcontractor for the Subcontractor Work and enter upon the premises of the Project and take possession of, for the purpose of completing the Subcontractor Work, all materials, tools, and appliances thereon and to employ any other person or persons to finish the Subcontractor Work and to provide materials in connection therewith. In the event of such discontinuance of the employment of the Subcontractor pursuant to this Agreement, the Contractor shall be under no obligation to make any further payment to the Subcontractor under this Agreement and shall deduct the costs of any substituted performance, including an amount equal to fifteen percent (l5%) thereof representing the Contractor's overhead, from any sums which may be due to the Subcontractor hereunder. If the entire Work is thereafter fully and completely finished and the Owner makes payment to the Contractor in accordance with the Owner-Contractor Agreement, then the Contractor shall pay to the Subcontractor any amounts due the Subcontractor for labor and materials actually provided under this Agreement but only to the extent of any surplus remaining after payment for the substituted performance, including the Contractor's overhead provided above. If the amount thereof is greater than any monies remaining under the Contract Sum, the Subcontractor shall pay the difference on demand to the Contractor.

## *ARTICLE X*

## SUBCONTRACTOR'S REMEDIES

10.1 If the Contractor does not pay the Subcontractor through no fault of the Subcontractor, within the time payment should be made as provided in Article IV, the Subcontractor may, without prejudice to any other remedy it may have, upon ten (10) days' written notice to the Contractor, stop its work until payment of the amount owing has been received. In such circumstances the Contract Sum shall, by

Subcontractor Initials ______

appropriate adjustment, be increased by the amount of the Subcontractor's reasonable costs of shutdown, delay and start-up.

10.2 If the Work is stopped by Subcontractor in accordance with subparagraph 10.1 for a period of ten (10) days or more through no fault of the Subcontractor because the Contractor has not made payments as provided in this Agreement (and not because of any of the events or circumstances referred to in Article IV hereof), then the Subcontractor may, without prejudice to any other remedy it may have, upon ten (10) days' written notice to the Contractor terminate this Agreement and recover from the Contractor for all work executed and for any proven loss resulting from the stoppage of the Work, including reasonable overhead, profit, damages on work performed and interest on late payments as provided in Paragraph 4.11 of this Agreement, but only to the extent authorized under 31 U.S.C. §3903(c)(1).

## *ARTICLE XI*

## <u>TERMINATION FOR CONVENIENCE</u>

11.1 The Contractor may terminate this Agreement for its convenience upon written notice to Subcontractor. In such an event, Subcontractor will be paid its share of the Contract Sum proportionate to the percentage of its work completed and other reasonable cancellation costs incurred as a result of said termination, minus all payments previously made by the Contractor and all amounts which the Contractor is entitled to charge to the Subcontractor under this Agreement. No payments shall be made for anticipated overhead and profit. Prior to making any payments pursuant to this paragraph, Contractor shall have the right to audit the records of Subcontractor. The Contractor's obligation hereunder is subject to the condition that Subcontractor's workmanship, materials and equipment for which payment is to be made as aforementioned comply with the requirements of this Agreement. In no event shall the amount to be paid for the account of the Subcontractor pursuant to this paragraph, plus amounts previously paid the Subcontractor, plus all amounts which the Contractor is entitled to charge the Subcontractor under this Agreement, exceed the Contract Sum, as adjusted pursuant to this Agreement.

11.2 In the event Contractor terminates this Agreement for convenience, the Subcontractor shall promptly (1) assign and transfer to the Contractor as directed by the Contractor, all materials, equipment, tools, plans and facilities for which payment has been or will be made under this Agreement and all contract orders and commitments and shall execute and deliver all such papers and all such actions as the Contractor may require to vest in the Contractor title in and to the same; (2) cancel as directed by the Contractor contracts, orders and commitments; and (3) sell at prices approved by the Contractor such materials, equipment, tools, plans and facilities as the Contractor shall direct, the proceeds to be paid or credited to the Contractor as it shall direct.

## *ARTICLE XII*

## <u>CLAIMS AND DISPUTE RESOLUTION</u>

12.1 Subcontractor shall make no claim for additional compensation or damages for any work done by it or by reason of any act or omission of the Contractor, General Contractor, Owner, or any other subcontractor, unless Subcontractor, not later than seven (7) days after the occurrence giving rise to the claim, has provided written notice thereof to the Contractor. In the event of any such claim dispute or other matter in question arising out of or relating to the Subcontract or the breach thereof, Subcontractor will carry on the Work and maintain the Progress Schedule during the pendency of any dispute until the Work is duly completed unless otherwise ordered by the Contractor in writing. Any controversy between the parties shall not be deemed the basis to delay or suspend the Work unless directed by Contractor.

12.2 All Subcontractor claims relating in any way to any omission or any instruction or direction given by the Owner or its Architect must proceed as set forth in Paragraph 8.7 of this Agreement.

12.3 Any dispute, controversy, or claim concerning the construction or application of this Agreement, other than those claims arising under paragraph 8.7 of this Agreement, that is not settled by the parties shall be decided in accordance with the dispute resolution procedures contained in the Owner-General Contractor Agreement. If the Owner-General Contractor Agreement does not provide a dispute resolution procedure, the dispute shall be arbitrated in accordance with the Construction Industry Arbitration

Subcontractor Initials DTA

Rules of the American Arbitration Association. The decision of the arbitrator shall be binding and judgment upon the award rendered by the Arbitrator may be entered into any court having jurisdiction thereof. The arbitration proceedings shall be conducted where the Project is located, or at the option of the Contractor, in Providence, Rhode Island. The institution of arbitration proceedings, based upon any claim, dispute, or other matter in question, shall not discharge Subcontractor of its obligation and responsibility to carry on the Work and maintain the schedules provided in the Contract Documents.

12.4 In the event that the Contractor becomes involved in any administrative proceeding, litigation, arbitration, or any other proceeding for the resolution of a dispute with the Owner and/or the General Contractor concerning or relating in whole or in part to the interpretation of the General Contractor-Contractor agreement or the Owner-Contractor Agreement as it relates to the Subcontractor's Work or the Subcontractor's performance of the Subcontractor's Work, the Contractor shall, within thirty (30) days of its receipt of notice of the said proceeding, give the Subcontractor written notice thereof. Thereupon, the Subcontractor shall have the opportunity to be represented by its own counsel at its expense in the said proceeding. Whether or not the Subcontractor supplies its own counsel, it shall be bound by the outcome of the said proceeding and any judgment, verdict, award or decision shall be binding upon the Subcontractor.

### *ARTICLE XIII*

### BACKCHARGES

13.1 In addition to other remedies in the Contract Documents, in the event Subcontractor fails to perform any portion of Subcontractor Work or fails to comply with this Agreement, Contractor shall notify Subcontractor of the failure. If the Subcontractor fails to cure the failure within forty-eight (48) hours, then Contractor has the right to perform or cause to perform said work and backcharge the Subcontractor all costs, including a reasonable amount for Contractor's overhead and profit, plus any Owner imposed liquidated damages.

**13.2 WRITTEN NOTICE TO SUBCONTRACTOR OF WITHHOLDING.** The Contractor shall provide the Subcontractor with written notice of any withholding, specifying:

(a) the amount to be withheld;
(b) the specific causes for the withholding under the terms of this Agreement; and
(c) the remedial actions to be taken by the Sub-Subcontractor in order to receive payment of the amount withheld.

Pursuant to 31 U.S.C. § 3905(g) Contractor shall provide a copy of all written notices of withholding sent to Subcontractor under this Article.

### *ARTICLE XIV*

### ADDITIONAL PROVISIONS

14.1 This Agreement is executed and delivered upon the condition precedent that the Subcontractor shall be approved by the person or persons required to do so by the Owner-General Contractor Agreement, and if either or any of them shall fail or refuse to approve the employment of the Subcontractor to do the Subcontractor Work, then this Agreement shall be null and void and of no force or effect and the Subcontractor shall not be deemed to have been damaged in any respect by the rescission or cancellation of the Agreement by the Contractor pursuant to this paragraph.

14.2 The Contractor and the Subcontractor, and their heirs, executors, administrators, successors and assigns shall be bound by and severally fully perform the covenants herein contained.

14.3 This Agreement shall be governed by the laws of the State of Rhode Island

14.4 If any term of this Agreement, or the application thereof to any person or circumstances, shall to any extent be invalid or unenforceable, the remainder of this Agreement, or the application of such term to persons or circumstances other than those as to whom it is invalid or unenforceable, shall not be

affected thereby, and each term of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

IN WITNESS WHEREOF, the parties hereto have, by their duly authorized representatives, hereunto set their hands and seals, the day and year above written.

**Please sign and date this last page of this Agreement , initial pages where indicated, and return two executed copies to the Contractor's office immediately. Payments cannot be processed prior to Contractor receiving executed copies of this Agreement.**

**0. AHLBORG & SONS, INC.**

By: ______________________
Its:

Date: 6/3/04

**SUBCONTRACTOR:**
**R.J. Sanders, Inc.**

______________________

Date: 13 APRIL 04