# ATTACHMENT 2

**AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT**

| 1. CONTRACT ID CODE | PAGE | OF PAGES |
|---|---|---|
| J | 1 | 95 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | PROJECT NO. (If applicable) |
|---|---|---|---|
| 08 | Same as Block 16C | | |

| 6. ISSUED BY | Code | 7. ADMINISTERED BY (If other than Item 6.) | Code |
|---|---|---|---|
| Commander<br>LANTNAVFACENGCOM<br>1510 Gilbert Street<br>Norfolk, Virginia 23511-2699 | N62470<br>AQ147 | | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | | |
|---|---|---|
| CENTRAL MAINE POWER COMPANY<br>83 EDISON DRIVE<br>AUGUSTA, MAINE 04330<br>ATTN: STEPHEN DANIELS<br>207-828-2869 | ☐ | 9A. AMENDMENT OF SOLICITATION NO. |
| | ☐ | 9B. DATED (SEE ITEM 11) |
| | ☒ | 10A. MODIFICATION OF CONTRACT/ORDER NO.<br>N62470-97-D-5018 - JN14 |
| | | 10B. DATED (SEE ITEM 13)<br>30 SEPTEMBER 1997 |
| CODE | FACILITY CODE | |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended ☐ is not extended. Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning __ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required) SCPE

SEE APPENDIX A FOR TERMS OF FINANCING

**13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATION CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103 (b).

☒ C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:
FAR 52.243, Changes

☐ D. OTHER: (specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

REASON FOR MODIFICATION: IMPLEMENTATION OF ECM MEASURES FOR PHASE II, DECENTRALIZATION, NAVAL STATION, NEWPORT, RHODE ISLAND

The Contractor is hereby directed to provide all services necessary to perform the work as shown in the Scope of Work dated December 23, 2003, attached hereto and made a part hereof. The work includes, but is not limited to:
(1) Phase 2 Decentralization (including MUSE work)
(2) Phase 3, Lighting and Controls

The total contract price is increased by $15,352,576.00 from $2,614,483.00 to $17,967,059.00 by reason of this change, all as directed by the Contracting Officer. The time for completion under this project is eighteen (18) months from the date of award.

All other terms and conditions shall remain the same.

Copy to:
ROICC Newport
Jim Carlson

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| Sara J. Burns<br>President | | | |
| 15B. CONTRACTOR/OFFEROR (Same as Item 8)<br>[signature]<br>(Signature of person authorized to sign) | 15C. DATE SIGNED<br>1/23/04 | 16B. UNITED STATES OF AMERICA<br>BY [signature]<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>28 Jan 04 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
30-105
STANDARD FORM 30 (REV.1-83)
Prescribed by GSA
0224-3(10-90)

[redacted]

include all delivery costs to the construction site and any applicable duty (whether or not a duty-free certificate may be issued).

(2) If the Government determines after contract award that an exception to the Buy American Act applies, the contract shall be modified to allow use of the foreign construction material, and adequate consideration shall be negotiated. However, when the basis for the exception is the unreasonable price of a domestic construction material, adequate consideration shall not be less than the differential established in paragraph (b)(4)(i) of this clause.

(3) If the Government does not determine that an exception to the Buy American Act applies, the use of that particular foreign construction material will be a failure to comply with the Act.

(d) For evaluation of requests under paragraph (c) of this clause based on unreasonable cost, the following information and any applicable supporting data based on the survey of suppliers shall be included in the request:

FOREIGN AND DOMESTIC CONSTRUCTION MATERIALS PRICE COMPARISON

| Construction Material Description | Unit of Measure | Price Quantity | (Dollars)* |
|---|---|---|---|
| *Item 1:* | | | |
| Foreign construction material | ________ | ________ | ________ |
| Domestic construction material | ________ | ________ | ________ |
| *Item2:* | | | |
| Foreign construction material | ________ | ________ | ________ |
| Domestic construction material | ________ | ________ | ________ |

*[List name, address, telephone number, and contact for suppliers surveyed. Attach copy of response; if oral, attach summary.]*
*[* Include all delivery costs to the construction site and any applicable duty (whether or not a duty-free entry certificate is issued.]*

**I.5 FAR 52.252-2, CLAUSES INCORPORATED BY REFERENCE (JUN 1988)**

This contract incorporates the following clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available.

| FAR CLAUSE | CLAUSE NAME |
|---|---|
| 52.202-1 | Definitions- Alternate I (OCT 1995) |
| 52.203-3 | Gratuities (APR 1984) |
| 52.203-5 | Covenant Against Contingent Fees (APR 1984) |
| 52.203-7 | Anti-Kickback Procedures (JUL 1995) |
| 52.203-8 | Cancellation, Rescission, and Recovery of Funds for Illegal or Improper Activity (JAN 1997) |
| 52.203-10 | Price or Fee Adjustment For Illegal or Improper Activity (JAN 1997) |
| 52.203-12 | Limitation on Payments To Influence Certain Federal Transactions (JUN 1997) |
| 52.204-2 | Security Requirements (Alt II) (APR 1984) |

| | |
|---|---|
| 52.204-4 | Printing/Copying Double-Sided on Recycled Paper (JUN 1996) |

| FAR CLAUSE | CLAUSE NAME |
|---|---|
| 52.209-6 | Protecting the Government's Interest When Subcontracting With Contractors Debarred, Suspended, or Proposed for Debarment (JUL 1995) |
| 52.211-15 | Defense Priority And Allocation Requirements (SEP 1990) |
| 52.211-5 | Material Requirements (OCT 1997) |
| 52.215-2 | Audit and Records—Negotiation (Alt I) (JAN 1997) |
| 52.215-8 | Order of Precedence—Uniform Contract Format (OCT 1977) |
| 52.215-10 | Price Reduction for Defective Cost or Pricing Data (OCT 1997) |
| 52.215-11 | Price Reduction for Defective Cost or Pricing Data—Modifications (OCT 1997) |
| 52.215-12 | Subcontractor Cost or Pricing Data (OCT 1 997) |
| 52.215-13 | Subcontractor Cost or Pricing Data—Modifications (OCT 1997) |
| 52.215-15 | Termination of Defined Benefit Pension Plans (OCT 1997) |
| 52.215-19 | Notification of Ownership Changes (OCT 1997) |
| 52.222-1 | Notice To The Government of Labor Disputes (FEB 1997) |
| 52.222-3 | Convict Labor (AUG 1996) |
| 52.222-4 | Contract Work Hours and Safety Standards Act - Overtime Compensation (JUL 1995) |
| 52.222-6 | Davis Bacon Act (FEB 1995) |
| 52.222-7 | Withholding of Funds (FEB 1988) |
| 52.222-8 | Payrolls and Basic Records (FEB 1988) |
| 52.222-9 | Apprentices and Trainees (FEB 1988) |
| 52.222-10 | Compliance with Copeland Act Requirements (FEB 1988) |
| 52.222-11 | Subcontracts Labor Standards (FEB 1988) |
| 52.222-12 | Contract Termination—Debarment (FEB 1988) |
| 52.222-13 | Compliance with Davis-Bacon and Related Act Regulations (FEB 1988) |
| 52.222-14 | Disputes Concerning Labor Standards (FEB 1988) |
| 52.222-15 | Certification of Eligibility (FEB 1988) |
| 52.222-26 | Equal Opportunity (APR 1984) |
| 52.222-27 | Affirmative Action Compliance Requirements for Construction (APR 1984) |
| 52.222-35 | Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (APR 1998) |
| 52.222-36 | Affirmative Action for Workers with Disabilities (JUN 1998) |
| 52.222-37 | Employment Reports on Special Disabled Veterans And Veterans of the Vietnam Era (APR 1998) |
| 52.223-2 | Clean Air And Water (APR 1984) |
| 52.223-6 | Drug Free Workplace (JAN 1997) |
| 52.223-10 | Waste Reduction Program (OCT 1997) |
| 52.223-12 | Refrigeration Equipment and Air Conditioners (MAY 1995) |
| 52.223-14 | Toxic Chemical Release Reporting (OCT 1996) |
| 52.225-5 | Buy American Act - Construction Materials (JUN 1997) |
| 52.225-11 | Restrictions on Certain Foreign Purchases (OCT 1996) |
| 52.226-1 | Utilization of Indian Organizations and Indian-Owned Economic Enterprises (SEP 1996) |
| 52.227-1 | Authorization and Consent (JUL 1995) |
| 52.227-2 | Notice and Assistance Regarding Patent and Copy Infringement (AUG 1996) |
| 52.228-1 | Bid Guarantee (SEP 1996) |
| 52.228-2 | Additional Bond Security (OCT 1997) |

| FAR CLAUSE | CLAUSE NAME |
|---|---|
| 52.228-5 | Insurance - Work on A Government Installation (JAN 1997) |
| 52.228-11 | Pledges Of Assets (FEB 1992) |
| 52.228-12 | Prospective Subcontractor Requests for Bonds (OCT 1995) |
| 52.228-14 | Irrevocable Letter of Credit (OCT 1997) |
| 52.228-15 | Performance and Payment Bonds—Construction (SEP 1996) |
| 52.229-4 | Federal, State, and Local Taxes (Non-competitive Contract) (JAN 1991) |
| 52.232-5 | Payments Under Fixed-Price Construction Contracts (MAY 1997) |
| 52.232-17 | Interest (JUN 1996) |
| 52.232-23 | Assignment Of Claims (ALT I) (APR 1984) |
| 52.232-27 | Prompt Payment for Construction Contracts (JUN 1997) |
| * 52.233-1 | Disputes (OCT 1995) |
| 52.233-3 | Protest After Award (AUG 1996) |
| 52.236-2 | Differing Site Conditions (APR 1984) |
| 52.236-3 | Site Investigation and Conditions Affecting the Work (APR 1984) |
| 52.236-5 | Material and Workmanship (APR 1984) |
| 52.236-6 | Superintendence by the Contractor (APR 1984) |
| 52.236-7 | Permits and Responsibilities (NOV 1991) |
| 52.236-8 | Other Contracts (APR 1984) |
| 52.236-9 | Protection of Existing Vegetation, Structures, Equipment, Utilities, and Improvements (APR 1984) |
| 52.236-10 | Operations and Storage Areas (APR 1984) |
| 52.236-11 | Use and Possession Prior to Completion (APR 1984) |
| 52.236-12 | Cleaning Up (APR 1984) |
| 52.236-13 | Accident Prevention (NOV 1991) |
| 52.236-14 | Availability and Use of Utility Services (APR 1984) |
| 52.236-15 | Schedules for Construction Contracts (APR 1984) |
| 52.236-16 | Quantity Surveys (APR 1984) |
| 52.236-17 | Layout of Work (APR 1984) |
| 52.236-21 | Specifications and Drawings for Construction (FEB 1997) |
| 52.236-26 | Pre-Construction Conference (FEB 1995) |
| 52.236-28 | Preparation of Proposals – Construction (OCT 1997) |
| 52.242-13 | Bankruptcy (JUL 1995) |
| 52.243-4 | Changes (AUG 1987) |
| 52.246-21 | Warranty of Construction (MAR 1994) |
| 52.248-3 | Value Engineering—Construction (MAR 1989) |
| 52.249-2 | Termination for Convenience of the Government (Fixed-Price) (Alt I) (SEP 1996) |
| 52.249-10 | Default (Fixed-Price Construction) (APR 1984) |

| DFARS CLAUSE | CLAUSE NAME |
|---|---|
| 252.203-7002 | Display of DoD Hotline Poster (DEC 1991) |
| 252.204-7000 | Disclosure Of Information (DEC 1991) |
| 252.209-7000 | Acquisition From Subcontractors Subject To On-Site Inspection Under The Intermediate Range Nuclear Forces (INF) Treaty (NOV 1995) |
| 252.223-7006 | Prohibition on Storage And Disposal of Toxic And Hazardous Materials (APR 1993) |
| 252.225-7014 | Preference For Domestic Specialty Metals (FEB 1997) |
| 252.225-7030 | Restriction on Acquisition of Carbon, Alloy, And Armor |

**GC.21.6 Operation and Maintenance Manuals**. At the time of Government Acceptance of a completed ECM, the Utility shall furnish, for the equipment specified, operation and maintenance manuals and recommended spare parts lists identifying components adequate for competitive supply procurement for operation and maintenance of ECM equipment. The operation and maintenance manuals shall include maintenance schedules for all equipment. The scope of each manual shall be agreed upon in the T.O.

**GC.21.7 Government Personnel Training for ECPs.** The Utility shall train Government personnel, as required, to operate, maintain, and repair ECM equipment and systems. The date and time of training shall normally be coordinated with the Contracting Officer or COR prior to Acceptance of the ECM. The cost for such training shall be included in the ECM Cost.

**GC.21.8 As-Built Drawings.** Within forty-five (45) calendar days after Government Acceptance of each installed ECM, the Utility shall submit as-built drawings to the Contracting Officer or COR. Drawings will not be required for component replacement. Drawings shall include at a minimum:

(a) The installation (i.e., form, fit, and attachment details) of the interface between ECM equipment and existing Government equipment,
(b) The location and rating of installed equipment on building floor plans.

**GC.21.9 Installation.** The Utility will arrange for the installation of approved ECMs and construction oversight and verify that the designed and specified energy efficiency equipment and/or system modifications are properly supplied or installed in a manner that will give the intended long term demand and energy reductions. The Utility will select Subcontractors in accordance with Paragraph GC.7 above.

**GC.22 Operation and Maintenance Phase.** The Government may elect to have the Utility perform the operation and maintenance on part or all of the ECM. Before exercising its option for this Phase, the Government and Utility shall agree upon a complete scope of work with specifications, schedules, warranties and cost.

**GC.23 Required FAR Clauses.** The following FAR clauses are required to be included in any contract with the Government:

| | |
|---|---|
| 52.203-3 | Gratuities, |
| 52.203-5 | Covenant Against Contingent Fees, |
| 52.203-7 | Anti-Kickback Procedures, |
| 52.222-3 | Convict Labor, |
| 52.222-25 | Affirmative Action Compliance, |
| 52.222-26 | Equal Opportunity, |
| 52.223-6 | Drug Free Workplace, |
| * 52.233-1 | Disputes. |

**Warranties and Remedies**

**WR.1 Warranties.** The Utility shall pass through to the Government all warranties on equipment installed pursuant to a T.O. In addition, the Utility will provide, from the date of Acceptance or Government Possession of an ECP, whichever is earlier, a one year comprehensive wrap-around warranty guaranteeing that the equipment installed shall perform in accordance with the specifications agreed upon between Government and Utility, as set forth in the applicable T.O.

In the event the Utility provides O&M services, a separate warranty will be negotiated for such services, in accordance with FAR Part 52, Subpart 52.246-20.

**WR.2 No Other Warranties.** The warranties set forth in WR.1 are exclusive and in lieu of all other warranties. The Utility makes no other representations or warranties of any kind with respect to the services and products it provides pursuant to this Agreement and subsequent T.O.s., The Utility does not guarantee any level of energy or water savings or cost reductions.

**WR.3 Utility Limitation of Liability.** The Utility shall not be liable for any special, incidental, indirect, or consequential damages, connected with or resulting from the performance or non-performance of work under this Agreement or subsequent T.O.s. In addition, the Utility shall not be liable under its warranty to the extent that damages are caused by Government negligence.

**WR.4 Utility Default.** The Government and Utility agree that Utility default provisions will be governed by those FAR clauses applicable to specific circumstances. A determination of applicable FAR default clauses will be made by the Contracting Officer for a specific T.O.

**WR.5 Prompt Payment.** As required in FAR, Part 32, Subpart 32.903, the Government shall promptly pay ECM utility bills. Late payments shall accrue interest as provided in FAR, Part 32, Subpart 32.907.

* **WR.6 Disputes.** Disputes that arise under this Agreement and subsequent T.O.s shall be governed by the applicable dispute provisions found at FAR, Part 33, Subpart 33.2.

**WR.7 Differing Site Conditions.** In the event site conditions differ materially from those contained in the T.O. additional costs incurred by the Utility due to the differing conditions shall be negotiated prior to work, and the ECM Cost shall be increased to reflect an equitable adjustment as permitted in FAR, Part 36, Subpart 36.502.

**WR.8 Suspension of Work.** In the event Work is delayed, suspended or stopped by the Government, FAR, Part 42, Subpart 42.13 shall apply.

## FINANCING AND PAYMENT PROVISIONS

**FP.1 Energy Savings and Financing.** It is intended that the annual energy savings achieved from the implementation of a Utility financed ECM under this Agreement will produce financial savings to the Government which are greater than the cost of implementing the ECM, including the cost of financing provided under this Agreement. The payment term cannot exceed ten years.

**FP.2 Financial Incentives, Rebates, and Design Assistance**: The Utility will provide to the Government the same financial incentives, rebates, design review, goods, services, and/or any other assistance provided without charge, that is generally available to customers of a similar rate class or size. Incentives that may be available are to be identified in the preliminary audit report provided according to Paragraph GC.15 and the ECM implementation proposal provided according to Paragraph GC.20.4.

**FP.3 Calculation of Payment.** Payment for accepted ECMs shall be equal to the ECM Cost amortized over a negotiated term. In accordance with 10 U.S.C. Section 2865, the cost of financing, if any, for any completed ECM shall be recovered under terms and conditions no less favorable than those for others in the same customer class. Monthly payments will commence on the date of the first Utility bill following the 30

(6) Before paying a recommended award of costs, agency personnel should consult legal counsel. Section 33.104(h) applies to all recommended awards of costs that have not yet been paid.

(7) Any costs the contractor receives under this section shall not be the subject of subsequent proposals, billings, or claims against the Government, and those exclusions should be reflected in the cost agreement.

(8) If the Government pays costs, as provided in paragraph (h)(1) of this section, where a postaward protest is sustained as the result of an awardee's intentional or negligent misstatement, misrepresentation, or miscertification, the Government may require the awardee to reimburse the Government the amount of such costs. In addition to any other remedy available, and pursuant to the requirements of subpart 32.6, the Government may collect this debt by offsetting the amount against any payment due the awardee under any contract between the awardee and the Government.

[57 FR 60585, Dec. 21, 1992, as amended at 60 FR 48227, 48275, Sept. 18, 1995; 61 FR 41470, Aug. 8, 1996; 61 FR 69289, Dec. 31, 1996; 62 FR 12718, Mar. 17, 1997; 62 FR 51271, Sept. 30, 1997; 62 FR 64933, Dec. 9, 1997; 63 FR 1532, Jan. 9, 1998; 63 FR 58603, Oct. 30, 1998]

### 33.105 [Reserved]

### 33.106 Solicitation provision and contract clause.

(a) The contracting officer shall insert the provision at 52.233-2, Service of Protest, in solicitations for contracts expected to exceed the simplified acquisition threshold.

(b) The contracting officer shall insert the clause at 52.233–3, Protest After Award, in all solicitations and contracts. If a cost reimbursement contract is contemplated, the contracting officer shall use the clause with its *Alternate I*.

[50 FR 25681, June 20, 1985, as amended at 60 FR 34759, July 3, 1995]

## Subpart 33.2—Disputes and Appeals

SOURCE: 48 FR 42349, Sept. 19, 1983, unless otherwise noted. Redesignated at 50 FR 2270, Jan. 15, 1985.

### 33.201 Definitions.

As used in this subpart—

*Accrual of a claim* means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

*Alternative dispute resolution (ADR)* means any type of procedure or combination of procedures voluntarily used to resolve issues in controversy. These procedures may include, but are not limited to, conciliation, facilitation, mediation, fact-finding, minitrials, arbitration, and use of ombudsmen.

*Defective certification* means a certificate which alters or otherwise deviates from the language in 33.207(c) or which is not executed by a person duly authorized to bind the contractor with respect to the claim. Failure to certify shall not be deemed to be a defective certification.

*Issue in controversy* means a material disagreement between the Government and the contractor that (1) may result in a claim or (2) is all or part of an existing claim.

*Misrepresentation of fact* means a false statement of substantive fact, or any conduct which leads to the belief of a substantive fact material to proper understanding of the matter in hand, made with intent to deceive or mislead.

[48 FR 42349, Sept. 19, 1983. Redesignated and amended at 50 FR 2270, Jan. 15, 1985; 56 FR 67417, Dec. 30, 1991; 59 FR 11381, Mar. 10, 1994; 60 FR 48230, Sept. 18, 1995; 63 FR 58594, Oct. 30, 1998; 66 FR 2132, Jan. 10, 2001; 67 FR 43514, June 27, 2002]

### 33.202 Contract Disputes Act of 1978.

The Contract Disputes Act of 1978, as amended (41 U.S.C. 601–613) (the Act), establishes procedures and requirements for asserting and resolving claims subject to the Act. In addition,

the Act provides for: (a) the payment of interest on contractor claims; (b) certification of contractor claims; and (c) a civil penalty for contractor claims that are fraudulent or based on a misrepresentation of fact.

[56 FR 67417, Dec. 30, 1991, as amended at 59 FR 11381, Mar. 10, 1994]

### 33.203 Applicability.

(a) Except as specified in paragraph (b) below, this part applies to any express or implied contract covered by the Federal Acquisition Regulation.

(b) This subpart does not apply to any contract with (1) a foreign government or agency of that government, or (2) an international organization or a subsidiary body of that organization, if the agency head determines that the application of the Act to the contract would not be in the public interest.

(c) This part applies to all disputes with respect to contracting officer decisions on matters *arising under* or *relating to* a contract. Agency Boards of Contract Appeals (BCA's) authorized under the Act continue to have all of the authority they possessed before the Act with respect to disputes arising under a contract, as well as authority to decide disputes relating to a contract. The clause at 52.233-1, Disputes, recognizes the *all disputes* authority established by the Act and states certain requirements and limitations of the Act for the guidance of contractors and contracting agencies. The clause is not intended to affect the rights and obligations of the parties as provided by the Act or to constrain the authority of the statutory agency BCA's in the handling and deciding of contractor appeals under the Act.

[48 FR 42349, Sept. 19, 1983. Redesignated and amended at 50 FR 2270, Jan. 15, 1985]

### 33.204 Policy.

The Government's policy is to try to resolve all contractual issues in controversy by mutual agreement at the contracting officer's level. Reasonable efforts should be made to resolve controversies prior to the submission of a claim. Agencies are encouraged to use ADR procedures to the maximum extent practicable. Certain factors, however, may make the use of ADR inappropriate (see 5 U.S.C. 572(b)). Except for arbitration conducted pursuant to the Administrative Dispute Resolution Act (ADRA), (5 U.S.C. 571, *et seq.*), agencies have authority which is separate from that provided by the ADRA to use ADR procedures to resolve issues in controversy. Agencies may also elect to proceed under the authority and requirements of the ADRA.

[59 FR 11381, Mar. 10, 1994, as amended at 63 FR 58595, Oct. 30, 1998]

### 33.205 Relationship of the Act to Pub. L. 85–804.

(a) Requests for relief under Pub. L. 85–804 (50 U.S.C. 1431–1435) are not claims within the Contract Disputes Act of 1978 or the Disputes clause at 52.233–1, Disputes, and shall be processed under part 50, Extraordinary Contractual Actions. However, relief formerly available only under Pub. L. 85–804; i.e., legal entitlement to rescission or reformation for mutual mistake, is now available within the authority of the contracting officer under the Contract Disputes Act of 1978 and the Disputes clause. In case of a question whether the contracting officer has authority to settle or decide specific types of claims, the contracting officer should seek legal advice.

(b) A contractor's allegation that it is entitled to rescission or reformation of its contract in order to correct or mitigate the effect of a mistake shall be treated as a claim under the Act. A contract may be reformed or rescinded by the contracting officer if the contractor would be entitled to such remedy or relief under the law of Federal contracts. Due to the complex legal issues likely to be associated with allegations of legal entitlement, contracting officers shall make written decisions, prepared with the advice and assistance of legal counsel, either granting or denying relief in whole or in part.

(c) A claim that is either denied or not approved in its entirety under paragraph (b) above may be cognizable as a request for relief under Pub. L. 85–804 as implemented by part 50. However, the claim must first be submitted to the contracting officer for consideration under the Contract Disputes Act

of 1978 because the claim is not cognizable under Public Law 85–804, as implemented by part 50, unless other legal authority in the agency concerned is determined to be lacking or inadequate.

**33.206 Initiation of a claim.**

(a) Contractor claims shall be submitted, in writing, to the contracting officer for a decision within 6 years after accrual of a claim, unless the contracting parties agreed to a shorter time period. This 6-year time period does not apply to contracts awarded prior to October 1, 1995. The contracting officer shall document the contract file with evidence of the date of receipt of any submission from the contractor deemed to be a claim by the contracting officer.

(b) The contracting officer shall issue a written decision on any Government claim initiated against a contractor within 6 years after accrual of the claim, unless the contracting parties agreed to a shorter time period. The 6-year period shall not apply to contracts awarded prior to October 1, 1995, or to a Government claim based on a contractor claim involving fraud.

[60 FR 48230, Sept. 18, 1995]

**33.207 Contractor certification.**

(a) Contractors shall provide the certification specified in paragraph (c) of this section when submitting any claim exceeding $100,000.

(b) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(c) The certification shall state as follows:

I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

(d) The aggregate amount of both increased and decreased costs shall be used in determining when the dollar thresholds requiring certification are met (see example in 15.403–4(a)(1)(iii) regarding cost or pricing data).

(e) The certification may be executed by any person duly authorized to bind the contractor with respect to the claim.

(f) A defective certification shall not deprive a court or an agency BCA of jurisdiction over that claim. Prior to the entry of a final judgment by a court or a decision by an agency BCA, however, the court or agency BCA shall require a defective certification to be corrected.

[59 FR 11381, Mar. 10, 1994, as amended at 60 FR 48218, 48230, Sept. 18, 1995; 62 FR 51271, Sept. 30, 1997; 63 FR 58595, Oct. 30, 1998]

**33.208 Interest on claims.**

(a) The Government shall pay interest on a contractor's claim on the amount found due and unpaid from the date that—

(1) The contracting officer receives the claim (certified if required by 33.207(a)); or

(2) Payment otherwise would be due, if that date is later, until the date of payment.

(b) Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the contracting officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim. (See 32.614 for the right of the Government to collect interest on its claims against a contractor).

(c) With regard to claims having defective certifications, interest shall be paid from either the date that the contracting officer initially receives the claim or October 29, 1992, whichever is later. However, if a contractor has provided a proper certificate prior to October 29, 1992, after submission of a defective certificate, interest shall be paid from the date of receipt by the Government of a proper certificate.

[59 FR 11381, Mar. 10, 1994, as amended at 60 FR 48230, Sept. 18, 1995]

**33.209 Suspected fraudulent claims.**

If the contractor is unable to support any part of the claim and there is evidence that the inability is attributable to misrepresentation of fact or to fraud

on the part of the contractor, the contracting officer shall refer the matter to the agency official responsible for investigating fraud.

### 33.210 Contracting officer's authority.

Except as provided in this section, contracting officers are authorized, within any specific limitations of their warrants, to decide or resolve all claims arising under or relating to a contract subject to the Act. In accordance with agency policies and 33.214, contracting officers are authorized to use ADR procedures to resolve claims. The authority to decide or resolve claims does not extend to—

(a) A claim or dispute for penalties or forfeitures prescribed by statute or regulation that another Federal agency is specifically authorized to administer, settle, or determine; or

(b) The settlement, compromise, payment or adjustment of any claim involving fraud.

[48 FR 42349, Sept. 19, 1983. Redesignated and amended at 50 FR 2270, Jan. 15, 1985; 51 FR 36972, Oct. 16, 1986; 59 FR 11381, Mar. 10, 1994]

### 33.211 Contracting officer's decision.

(a) When a claim by or against a contractor cannot be satisfied or settled by mutual agreement and a decision on the claim is necessary, the contracting officer shall—

(1) Review the facts pertinent to the claim;

(2) Secure assistance from legal and other advisors;

(3) Coordinate with the contract administration office or contracting office, as appropriate; and

(4) Prepare a written decision that shall include a—

(i) Description of the claim or dispute;

(ii) Reference to the pertinent contract terms;

(iii) Statement of the factual areas of agreement and disagreement;

(iv) Statement of the contracting officer's decision, with supporting rationale;

(v) Paragraph substantially as follows:

"This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision"; and

(vi) Demand for payment prepared in accordance with 32.610(b) in all cases where the decision results in a finding that the contractor is indebted to the Government.

(b) The contracting officer shall furnish a copy of the decision to the contractor by certified mail, return receipt requested, or by any other method that provides evidence of receipt. This requirement shall apply to decisions on claims initiated by or against the contractor.

(c) The contracting officer shall issue the decision within the following statutory time limitations:

(1) For claims of $100,000 or less, 60 days after receiving a written request from the contractor that a decision be rendered within that period, or within a reasonable time after receipt of the claim if the contractor does not make such a request.

(2) For claims over $100,000, 60 days after receiving a certified claim; *provided, however*, that if a decision will not be issued within 60 days, the contracting officer shall notify the contractor, within that period, of the time within which a decision will be issued.

(d) The contracting officer shall issue a decision within a reasonable time, taking into account—

(1) The size and complexity of the claim;

(2) The adequacy of the contractor's supporting data; and

(3) Any other relevant factors.

(e) The contracting officer shall have no obligation to render a final decision on any claim exceeding $100,000 which contains a defective certification, if within 60 days after receipt of the claim, the contracting officer notifies the contractor, in writing, of the reasons why any attempted certification was found to be defective.

(f) In the event of undue delay by the contracting officer in rendering a decision on a claim, the contractor may request the tribunal concerned to direct the contracting officer to issue a decision in a specified time period determined by the tribunal.

(g) Any failure of the contracting officer to issue a decision within the required time periods will be deemed a decision by the contracting officer denying the claim and will authorize the contractor to file an appeal or suit on the claim.

(h) The amount determined payable under the decision, less any portion already paid, should be paid, if otherwise proper, without awaiting contractor action concerning appeal. Such payment shall be without prejudice to the rights of either party.

[48 FR 42349, Sept. 19, 1983. Redesignated at 50 FR 2270, Jan. 15, 1985, and amended at 54 FR 34755, Aug. 21, 1989; 59 FR 11382, Mar. 10, 1994; 60 FR 48230, Sept. 18, 1995]

**33.212 Contracting officer's duties upon appeal.**

To the extent permitted by any agency procedures controlling contacts with agency BCA personnel, the contracting officer shall provide data, documentation, information, and support as may be required by the agency BCA for use on a pending appeal from the contracting officer's decision.

**33.213 Obligation to continue performance.**

(a) In general, before passage of the Act, the obligation to continue performance applied only to claims arising under a contract. However, the Act, at 41 U.S.C. 605(b), authorizes agencies to require a contractor to continue contract performance in accordance with the contracting officer's decision pending a final resolution of any claim arising under, or relating to, the contract. (A claim arising under a contract is a claim that can be resolved under a contract clause, other than the clause at 52.233–1, Disputes, that provides for the relief sought by the claimant; however, relief for such claim can also be sought under the clause at 52.233–1. A claim relating to a contract is a claim that cannot be resolved under a contract clause other than the clause at 52.233–1.) This distinction is recognized by the clause with its *Alternate I* (see 33.215).

(b) In all contracts that include the clause at 52.233–1, Disputes, with its *Alternate I*, in the event of a dispute not arising under, but relating to, the contract, the contracting officer shall consider providing, through appropriate agency procedures, financing of the continued performance; *provided*, that the Government's interest is properly secured.

[48 FR 42349, Sept. 19, 1983. Redesignated at 50 FR 2270, Jan. 15, 1985, as amended at 64 FR 72451, Dec. 27, 1999; 67 FR 43514, June 27, 2002]

**33.214 Alternative dispute resolution (ADR).**

(a) The objective of using ADR procedures is to increase the opportunity for relatively inexpensive and expeditious resolution of issues in controversy. Essential elements of ADR include—

(1) Existence of an issue in controversy;

(2) A voluntary election by both parties to participate in the ADR process;

(3) An agreement on alternative procedures and terms to be used in lieu of formal litigation; and

(4) Participation in the process by officials of both parties who have the authority to resolve the issue in controversy.

(b) If the contracting officer rejects a contractor's request for ADR proceedings, the contracting officer shall provide the contractor a written explanation citing one or more of the conditions in 5 U.S.C. 572(b) or such other specific reasons that ADR procedures are inappropriate for the resolution of the dispute. In any case where a contractor rejects a request of an agency for ADR proceedings, the contractor shall inform the agency in writing of

the contractor's specific reasons for rejecting the request.

(c) ADR procedures may be used at any time that the contracting officer has authority to resolve the issue in controversy. If a claim has been submitted, ADR procedures may be applied to all or a portion of the claim. When ADR procedures are used subsequent to the issuance of a contracting officer's final decision, their use does not alter any of the time limitations or procedural requirements for filing an appeal of the contracting officer's final decision and does not constitute a reconsideration of the final decision.

(d) When appropriate, a neutral person may be used to facilitate resolution of the issue in controversy using the procedures chosen by the parties.

(e) The confidentiality of ADR proceedings shall be protected consistent with 5 U.S.C. 574.

(f)(1) A solicitation shall not require arbitration as a condition of award, unless arbitration is otherwise required by law. Contracting officers should have flexibility to select the appropriate ADR procedure to resolve the issues in controversy as they arise.

(2) An agreement to use arbitration shall be in writing and shall specify a maximum award that may be issued by the arbitrator, as well as any other conditions limiting the range of possible outcomes.

(g) Binding arbitration, as an ADR procedure, may be agreed to only as specified in agency guidelines. Such guidelines shall provide advice on the appropriate use of binding arbitration and when an agency has authority to settle an issue in controversy through binding arbitration.

[56 FR 67417, Dec. 30, 1991, as amended at 59 FR 11382, Mar. 10, 1994; 60 FR 48230, Sept. 18, 1995; 63 FR 58595, Oct. 30, 1998]

### 33.215 Contract clauses.

(a) Insert the clause at 52.233-1, Disputes, in solicitations and contracts, unless the conditions in 33.203(b) apply. If it is determined under agency procedures that continued performance is necessary pending resolution of any claim arising under or relating to the contract, the contracting officer shall use the clause with its *Alternate I*.

(b) Insert the clause at 52.233-4 in all solicitations and contracts.

[69 FR 59700, Oct. 5, 2004]

C

**Effective: [See Text Amendments]**

Code of Federal Regulations Currentness
Title 48. Federal Acquisition Regulations System
Chapter 1. Federal Acquisition Regulation
Subchapter H. Clauses and Forms
Part 52. Solicitation Provisions and Contract Clauses (Refs & Annos)
Subpart 52.2 Texts of Provisions and Clauses

**→52.233-1 Disputes.**

As prescribed in 33.215, insert the following clause:

Disputes (JUL 2002)

(a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).

(b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

(c) Claim, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

(d)(2)(i) The Contractor shall provide the certification specified in paragraph (d)(2)(iii) of this clause when submitting any claim exceeding $100,000.

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

(g) If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use alternative dispute resolution (ADR). If the Contractor refuses an offer for ADR, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the offer.

(h) The Government shall pay interest on the amount found due and unpaid from (1) the date that the Contracting Officer receives the claim (certified, if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment. With regard to claims having defective certifications, as defined in (FAR) 48 CFR 33.201, interest shall be paid from the date that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Contracting Officer initially receives the claim. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

(i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

(End of clause)

Alternate I (Dec 1991). As prescribed in 33.215, substitute the following paragraph (i) for paragraph (i) of the basic clause:

(i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.

[50 FR 26904, June 28, 1985; 51 FR 36972, Oct. 16, 1986; 56 FR 67417, Dec. 30, 1991; 59 FR 11382, March 10, 1994; 60 FR 48230, Sept. 18, 1995; 61 FR 31659, June 20, 1996; 63 FR 58595, Oct. 30, 1998; 67 FR 43514, June 27, 2002; 67 FR 47635, July 19, 2002]

SOURCE: 48 FR 42478, Sept. 19, 1983; 48 FR 43273, Sept. 22, 1983; 50 FR 52429, Dec. 23, 1985; 54 FR 5054, Jan. 31, 1989; 60 FR 48218, Sept. 18, 1995; 68 FR 28079, 28091, 28097, 28098, May 22, 2003; 68 FR 43856, 43865, 43869, 43874, July 24, 2003; 68 FR 56672, 56683, 56684, 56686, Oct. 1, 2003; 68 FR 69254, 69258, Dec. 11, 2003; 69 FR 1053, Jan. 7, 2004; 69 FR 16149, March 26, 2004; 69 FR 17744, 17770, April 5, 2004; 69 FR 25275, May 5, 2004; 69 FR 34227-34229, 34240, June 18, 2004; 69 FR 59700, 59704, Oct. 5, 2004; 69 FR 76345, 76348, 76353, 76358, Dec. 20, 2004; 69 FR 77872, Dec. 28, 2004; 70 FR 11742, 11752, 11762, 11763, March 9, 2005; 70 FR 14954, March 23, 2005; 70 FR 18959, April 11, 2005; 70 FR 33656, 33659, 33661, 33665, 33673, June 8, 2005; 70 FR 43581, 43582, 43584, July 27, 2005; 70 FR 57459, Sept. 30, 2005; 71 FR 20304, April 19, 2006; 71 FR 38245, July 5, 2006, unless otherwise noted.

AUTHORITY: 40 U.S.C. 121(c); 10 U.S.C. chapter 137; and 42 U.S.C. 2473(c).

48 C. F. R. 52.233-1, 48 CFR 52.233-1

Current through November 9, 2006; 71 FR 66061

Copr. © 2006 Thomson/West

END OF DOCUMENT